## STREET RAILWAYS—APPROPRIATING LANDS— EVIDENCE.

[Lucas Circuit Court, January, 1893.]

Bentley, Scribner and Haynes, JJ.

†THE TOLEDO CONSOLIDATED St. Ry. COMPANY v. THE TOLEDO ELECTRIC St. Ry. COMPANY.

1. APPROPRIATING THE USE OF STREET RAILWAY TRACKS.

Where the common council of a municipal corporation has granted by ordinance, and in conformity with the power conferred upon it by the legislature, the right to a certain street railway to appropriate the use of certain existing tracks of another street railway in certain designated streets, and such company by virtue of such ordinance appropriate the tracks in a particular street, it will not be precluded from subsequently appropriating more of the tracks in the remaining streets without having first obtained an additional ordinance granting it the right to appropriate such additional tracks.

2. SUFFICIENCY OF PETITION OF APPROPRIATING COMPANY.

Where one street railway company seeks to appropriate the tracks of another company, the petition of such appropriating company will be considered sufficient, if it substantially shows, or necessary facts sufficiently appear, that it constructed and has in operation eight times the length of track that is sought to be appropriated.

3. ALLEGATIONS OF TIME IN APPROPRIATING PROCEEDINGS.

In an ordinary proceeding of condemnation of property, it is not usual or necessary for the appropriating company to state for what length of time it proposes to use the property appropriated.

†Dismissed, in Supreme Court, by consent of parties, 3 News, 255.

**4. Proof of the Passage of an Ordinance.**

> The passage of an ordinance by the city council and which ordinance has been duly recorded, may be proved by a transcript of the same, duly certified to by the city clerk.

**5. Cross-Examination of the Contents of Sealed Pages of a Record Book.**

> Where a corporation in order to show its due organization and the right to make a certain appropriation, offered in evidence certain pages of its record, with the remaining pages of such book being sealed or fastened up, and upon cross-examination it was sought to show what the contents of the sealed pages were: *Held*, that the parties seeking such cross-examination would have to proceed under the provisions of sections 5290 and 5291, Revised Statutes, when the opposing counsel state that such sealed pages have no relevancy to the case.

**6. Evidence of Value of Property Sought to be Appropiated.**

> Tax returns of property are competent as evidence and may be allowed to go to the jury and considered by them in arriving at the value of the property sought to be appropriated.

**7. A Juror Serving Without Having Been Properly Summoned.**

> Where a juror not drawn upon the panel regularly, but an interloper, answered to the name of a juror regularly upon the panel, and both parties to the action supposed all the while that such juror was really the juror drawn: *Held*, that this would not invalidate the verdict rendered, if the juror so serving was in all other respects legally qualified to serve as a juror, had he been properly summoned.

Error to the Court of Common Pleas of Lucas county.

Bentley, J.

The case of *The Consolidated Railway Company* against *The Toledo Electric Street Railway Company*, *No. 674* is an action in error in this court wherein it is sought to have the judgment of the court of common pleas affirming the judgment of the probate court of the county in the condemnation case and the judgment of the probate court reversed. It is perhaps ordinarily known among those interested in it as the Summit street condemnation case, in which it was sought by the Toledo Electric Street Railway company, to condemn or appropriate for its benefit and use, the use of certain street railway tracks in certain streets in the city, among them Summit street, the tracks being those of the Toledo Consolidated Street Railway company.

The case in the probate court seems to have required a very great length of time and an immense record, which we have before us here, brought up for the consideration of this court. There was a multitude of exceptions taken in the case in the course of proceedings in the probate court. Quite a large number of them, and questions arising upon them, have been, perhaps, determined in this court heretofore in another case coming up to it between the same parties, in the condemnation of tracks in Adams street, *Toledo Consolidated Street Railway Company* v. *Toledo Electric Street Railway Company*, 3 C. C. D., 493. While the record in this case is immense, comparatively few questions have been argued by counsel and presented to this court at this time; that is to say, the general questions presented apply to a large number of the exceptions. Now, there will be no attempt to deliver a complete or orderly decision in this case. We think, considering the situation of the case and of the

parties and of all concerned, it would not be proper or just for this court to retain it undisposed of for the length of time that it would require to treat all of the questions involved with particularity and to elaborate upon them—as perhaps it might be, under other circumstances, well to do, but we will simply allude in a general way to the questions which were made upon argument before us, indicating our views upon them, and the general disposition which we are inclined to make of the case.

A number of bills of exceptions were taken during the trial of this case. These might be divided into two classes: those which pertain to the preliminary hearing in the probate court, and those which concern the proceedings upon the trial in the probate court before the jury. We notice that bills of exceptions were taken by others than those who are regarded as the principal parties here to the petition in error and cross-petitions in error filed in the court of common pleas; but allusion to them was not made in the trial before us, and we understand that there are no cross-petitions here, so that the questions made here are really between the Consolidated Street Railway company and The Electric Street Railway company.

In the order of the occurernces, the questions made on the preliminary hearing would naturally come first, and we will therefore allude to them and indicate our views regarding them one by one.

One question that is made is an underlying one. Under a certain ordinance granted by the common council in favor of the Toledo Electric Street Railway comyany, it was specified that it might, and if it should build its road, should use only existing tracks in certain streets named in the ordinance; and appropriation proceedings having before this action was commenced been begun by the Electric Street Railway company in the probate court to condemn the use of the tracks upon Adams street— it is claimed by plaintiff in error that the power to appropriate under that ordinance was exhausted; and especially is this claimed by reason of certain considerations named in the Adams street case (so called) as reported in the Sixth Ohio Circuit Decisions, 493, and especially the eleventh and thirteenth paragraphs of the syllabus in that case. The eleventh paragraph of the syllabus is, in effect, that it would be sufficient under the law if at the time those proceedings were had in the Adams street case, that the appropriating company then had constructed and was operating eight times as great a length of line as was sought to be appropriated in that case; and the thirteenth paragraph of the syllabus is substantially, that the council having found the necessity for this appropriation—if it acted in good faith and without fraud—its conclusions in that respect were conclusive and final upon the parties and upon the probate court. It is argued in view of these rulings by this court, that if the council in passing the ordinance is supposed to have conclusively determined the question of the necessity of this appropriation, it must be held to have rendered its judgment in view of the use of the tracks in all of the streets specified in that ordinance—all of the existing streets to be used by that company; and it is claimed, and was claimed upon that trial, that it is not proper or competent for the appropriating company to appropriate sections of the streets thus designated in the ordinance by piecemeal; that if the judgment of the council was as to its necessity at all, it related to the necessity of the use and appropriation of all of the streets named in the ordinance to be used; and certainly (whether that be true or not), it is argued, that if the appropriating company sees fit under an ordinance of that kind to apply for the appropriation of tracks

in only one particular street of those mentioned, it cannot, without the judgment of the council as to other streets, appropriate the tracks existing in the other streets under the same ordinance.

Now, briefly as to the views of this court as expressed in that case to which reference has been made. I would call attention to the authorities cited upon page 390 and ending upon the top of page 391 of the opinion in that case, upon this question:

"That body in the exercise of its legitimate authority has authorized the defendant in error, as the assignee of, and successor to the rights of David Robinson, jr., to operate its line of railway upon certain designated streets; no other streets than those so designated may be devoted to that purpose by the appropriating company. The statute requires the railway company to obtain the written consents of the owners of property abutting upon such streets before proceeding with the proposed enterprise. The council has also authorized the appropriating company to use, upon certain streets named, the tracks of the Consolidated company; and as before stated, by an ordinance of a later date, it has required this to be done upon that portion of Adams street here in question. In the absence of evidence impeaching this action of the council for fraud, we think the probate judge is concluded thereby, and that he is not at liberty to annul or disregard it."

Now the same might be said of the portions of the tracks that this jury considered, viz.: That by the first ordinance this appropriating company was given the right to use those existing tracks, and by a later ordinance, under which it claims to act, this was required to be done. Now, considering the nature of the case and the situation of affairs, it was thought by this court that the question of the necessity of the appropriation had been thus determined by the council. That in this conclusion the council is the final judge of the necessity, follows from the nature of the case rather than from considering that the council in a particular case, as a matter of fact, found and stated that a necessity for an appropriation of these tracks existed in each particular case in the different streets.

It occurs to us that the same reasoning which the court followed in that case, would still apply as to the appropriating of the tracks in Summit street or these other streets, and that, from the very nature of the case, the appropriating company would have no more authority if it had a new ordinance, than it now has under the ordinance already passed. In general, we find that this position of the counsel for the Consolidated Street Railway company is not well taken, notwithstanding the appropriation proceedings upon Adams street, that this appropriation proceeding might be instituted, and that the same rule regarding the necessity of the appropriation proceeding would apply in this case as in the other case, viz: that the probate court is concluded by the action of the council in the premises and the situation of affairs.

Another objection urged upon the preliminary hearing was: that it does not appear from the statements of the amended petition that the appropriating company had, at the time this action was begun, eight times the length of line constructed and in actual operation that was sought to be appropriated; while the length of line which it in fact had was stated in the amended petition; yet there was no statement of the relation of that length to the length of the line sought to be appropriated here, and no absolute statement of the length of the line that was

in fact sought to be appropriated in this proceeding. R. S., sec. 3438, 3440.

The amended petition sets forth that in certain streets the appropriating company has constructed and is operating its road. It gives the length of its line upon each of these streets—tabulates it, as it were—and then adds that besides the length of lines in these streets which it is operating, it has appropriated 1901 feet in Adams street, and then proceeds to state that the whole length of its line thus constructed and operated is over fourteen miles.

It is said, however, the amended petition does not state that the portion of the consolidated track sought to be appropriated is one-eighth, or less than one-eighth of the entire length of line of the appropriating company—that is, fourteen miles—or whatever it might be; neither does it state—it is claimed—the absolute length of the track sought to be appropriated in this proceeding, and that the court cannot determine even from the statements of the amended petition that in fact it has eight miles to one sought to be appropriated. We have examined the amended petition in these respects. Of course it is true that there is no general allegation that the length of line sought to be appropriated is so many feet; neither is it stated that it has eight times the length of the line sought to be appropriated in actual operation. But the question is whether from the petition the necessary facts sufficiently appear so that the proceedings ought to be sustained so far as this objection goes. From the statements of the amended petition we can determine, by addition, the length of the line claimed to be appropriated by the appropriating company besides the 1901 feet upon Adams street. There is attached to the amended petition a map or plat of the tracks in question, that is, the tracks sought to be appropriated; but it is claimed on the one hand that it does not show the length of the line sought to be appropriated; and on the other hand it is claimed that from it it can be determined. These papers are so voluminous that we will not attempt to turn to those portions of the record, which would require time, and we will content ourselves with stating the general facts as we recollect them, attempting to state them exactly in the language of the amended petition, or to state the actual figures. This plat shows upon its face that it is drawn upon the scale of one hundred feet to the inch. It purports to give the section of those streets in question, and where cross-streets come in. It gives a representation of the tracks in question, and the amended petition designates the kind of line that shows the tracks sought to be appropriated. On the margin are certain figures which ordinarily would be taken to mean the length of certain adjacent lines. For instance, where a cross-street comes across Summit street are figures between where the crossings come; in the case of Jefferson street, for instance, there are the figures "80;" in the case of another cross-street or two, are the figures "66," and so on; and between these streets are the figures "420," and in some places "120" and in some places "100." I think a person looking at those figures would conclude almost at once that they refer to the feet, and refer to the distance, the width of the streets and the length of the blocks between the cross-streets. Taking that in connection with what is said as to the scale upon which the map is drawn, we think that with a reasonable degree of certainty is indicated the length of these tracks which it is sought to appropriate; we think the length of these tracks sought to be appropriated can with reasonable certainty be fairly gathered from the statements of the amended

petition in connection with the plat, and at least upon this question, under circumstances of that kind, we would feel unwilling to disturb the proceedings because it did not more definitely appear just what those figures were. We think it does not sufficiently appear, for the purposes of the case, in the amended petition that the appropriating company has constructed and has in operation more than eight times—considerable more than eight times—the length of track that is sought to be appropriated; and also that this statement is true excluding what is said regarding the length of line on Adams street. So that we find it unnecessary to determine whether or not it would have been competent for the appropriating company to consider, as a part of its construction and its operating road, that part of Adams street which it did not originally construct and which it is operating its cars over simply by force of the former appropriation proceedings.

It is objected, in this preliminary matter, also that sufficient data are not given in the record whereby it can be determined what length of time this use sought to be appropriated will last. It is said that there is no statement in the amended petition as to what length of time this use will be required by the appropriating company; it is not stated what length of time the right of the consolidated company to maintain its tracks upon the streets will last; that even the ordinance of the consolidated company is not attached; and neither is it stated in the amended petition when that ordinance was granted, so that it can be made to appear by the record in no way for what length of time this use is to be had. We think in an ordinary proceeding of condemnation it is not usual for the appropriating company to state in the proceeding for what length of time it proposes to use the property appropriated. It is to be supposed, under the law, that it will use it—claim the right to use it—as long as it conducts the enterprise for which the appropriation is made. It is said, in this case and in the other cases to which I have alluded, that the right would end with the present franchise of the consolidated company, and although that does not appear in these proceedings, we are at a loss to see how the failure to make it appear can work prejudice to the consolidated company. From the presumptions that arise in the case the damages to be assessed would be compensated upon the same supposition and basis that its use was to be as long as the appropriating company saw fit to use it, or as long as the property in question existed; so we suppose the damages would be assessed upon the basis of that use continuing as long as it could continue under the law and the circumstances of the case; and therefore, if any prejudice resulted from the record not stating the limitation of this use—to be limited by the length of time that the franchises of the consolidated company are still to last—we think the prejudice would be to the other party rather than to the consolidated, viz., that it would tend, if the limitation appeared, to lessen the damages rather than to enhance them. We therefore think that in this matter no prejudice appears to the consolidated company.

A question of importance is also presented here in these preliminary proceedings as to the competency of a transcript or copy of the ordinances of the appropriating company. The record of the passage of the ordinance was not introduced. The ordinances themselves were not introduced. Such proof as was made of the passage and existence of the ordinances appeared in the form of a transcript certified by the clerk of the corporation as being taken from the records of the corporation. What is said to be a transcript of the ordinances in

question is here, and at the close are these statements: "Passed March 27, 1889. Attest, G. H. Cole, city clerk." And also the following certificate of acceptance, to wit: "The within acceptance was filed by David Robison, Jr., trustee, on the 12th and 26th day of April, 1889. Attest, G. H. Cole, city clerk. In the testimony whereof witness my hand and seal the day and year above written, C. H. Durian, city clerk."

For myself, I could willingly wish that the difficulties here presented were not exactly in the form they are; I think that upon this question there is room for some doubt; but this is to be remembered; that the city clerk certifies that this is an ordinance appearing upon the record books of the common council. If it was an ordinance, it was his duty to transcribe it—to enter it upon the records of the council, and then it was properly recorded under the law, and he could give a transcript and certify to it so as to render it receivable in evidence. Now it appears, that such a paper was recorded in the ordinance book of the city clerk, and it comes from the place—is transcribed from the book where the ordinance should have been recorded, and unless it were duly passed, unless it had a right under the law to a position on the book, there is no authority to place it there. The fact that it was there; that it was recorded in the proper place of ordinances—taking into consideration the certificate of the clerk—we are at least not satisfied that the reception of it was erroneous—although, as I have said, there might be some question about it.

The next question presented arose from the fact that the appropriating company offered in evidence—in order to show its due organization, etc.—a portion of its records—presented a book, which is generally denominated "Exhibit No. 2," and offered certain pages, to which attention was called, in evidence. Certain other pages of the same book were sealed up, or fastened up in some way, and upon cross-examination of the president of the appropriating company it was sought to be shown what the contents of the book thus sealed up were, in whose handwriting the pages were, etc., and that evidence was ruled out by the court. It was asserted by counsel that this contained evidence pertinent to the matters then under inquiry. I will read a small portion of this, to indicate the character of the testimony. When Mr. Robison, the president, was on the stand he was cross-examined by counsel for the defendant company as follows:

"Q. Mr. Robison, have you examined the book to see that you know what it is? A. Yes, sir.

"Q. You may tell us whether or not there were other meetings and proceedings of the board of directors of the Toledo Electric Street Railway Co., in the parts of this book that you produced, which has not been offered in evidence—from pages 36 to 55? (Objected to.)

"Mr. Smith: I offer, expect and intend to prove by the answer of this witness to this question that from pages 38 to 55 inclusive this book contains the record of the proceedings of the plaintiff, The Toledo Electric Street Railway Company, including a meeting of the directors of said company which was held on the 8th day of August, 1890, and that that meeting of the board of directors related to the appropriation of this property.

"Mr. Brumback: If your Honor please, upon that statement, we ask the court to look at the book and examine those pages.

"Mr. Smith: I object to the court looking at anything not offered in evidence.

"Mr. Hurd: You are trying to offer it in evidence.

"Mr. Brumback: We desire the court to examine those pages in order to enable the court to pass upon this objection.

"The Court: I doubt the propriety of the court looking at anything that has not been offered in evidence. I think it safer for the court to rule against it, without looking at the book.

"Mr. Brumback: Please note an exception to the refusal of the court to make the examination of the book.

"Mr. Smith: Q. You may tell us whether or not, Mr. Robison, pages 58 and 64 and 65 of this book marked 'Exhibit No. 2' are a part of the records of the proceedings of the plaintiff corporation? A. 58 was not offered.

"Mr. Brumback: He means those that were not offered.

"Mr. Smith: Q. I am referring to one of those which were not offered.

"Mr. Brumback: We object to the question.

"Mr. Smith: The court has passed upon that. I offer, expect and intend to prove by the answer of this witness to this question that pages 58 and 64 and 65 of the book marked 'Exhibit No. 2' contain the records of the proceedings of the board of directors and of the stockholders of the plaintiff's corporation, and that those records relate to the organization and existence of this corporation.

"Mr. Brumback: We state that there is nothing of the kind contained in these pages relating to the appropriation of the property sought in this proceeding, and ask the court to inspect the pages for its own information, so as to know that our statement is correct. The same ruling is made as before, I suppose, and we desire an examination of the book. (Objection sustained.)"

And to that the Toledo Consolidated Street Railway company took an exception.

"Mr. Smith: You may tell us whether or not pages 70 to 83, inclusive of the book marked 'Exhibit No. 2' are records of the plaintiff company, and whether or not they contain the proceedings of the board of directors and of the stockholders of that company? (Objected to.)

"Mr. Smith: We offer, expect and intend to prove by the answer of this witness to this question that pages 70 to 83, inclusive, of the book marked 'Exhibit No. 2,' are part of the proceedings of the board of directors and of the stockholders of the plaintiff company herein, and that these pages relate to the existence of this corporation; to the legality of the election of the persons purporting to act as directors of said company; to the election of the person purporting to act as secretary of this company; to the inability of this plaintiff to agree with the defendant corporation as to the compensation to be paid for the use of the property described in the petition herein, and that these pages were written, and the transactions therein recorded occurred prior to the commencement of these proceedings."

Then counsel for the appropriating company denied that such matters were in the parts of the record in question, and then requested the court to look at it and determine it. The court refused to do so, and sustained the objection, and the Consolidated Street Railway company took an exception. I will not read all of this part of the record, for it is very lengthy.

"Q. I call your attention to the book marked "Exhibit No. 2." I

find that certain leaves in this book are fastened together. Tell us by whose direction that was done? A. Mr. Brumback and I did that.

Q. Mr. Brumback is your attorney in this matter? A. Yes, sir; and he is an officer of the company.

Q. "And these pages fastened together are part of the proceedings, or purport to be part of the proceedings, of the Toledo Electric Street Railway company? (Objected to.)

"Mr. Smith: I offer, expect and intend to prove by the answer of this witness to this question that pages 38 to 55, both inclusive, page 58, page 69 and page 83 of said book are part of the consecutive proceedings of the Toledo Electric Street Railway company from its alleged organization down to the time of the commencement of this suit, and form a continous part of the book marked 'Exhibit No. 2.' (Objection sustained; to which the defendant the Toledo Consolidated Street Railway company, then and there excepted.)"

There is again a request by the appropriating company's counsel for the court to examine and see whether anything pertinent to the issue was contained in that part of the record; and the court again refused.

"Mr. Smith: We ask permission from counsel for the defendant, The Toledo Consolidated Street Railway company, to inspect jointly with the court the said book for said purpose."

Mr. Brumback objected, again stating that it had no relevancy.

" Mr. Smith: Do you consent to or refuse counsel for the Toledo Consolidated Street Railway company permission to inspect these parts of the book to which attention has been called?

" Mr. Hurd: We refuse of course."

On pages 146 and 148 the matter came up again in another form. After it is stated by the officer of the appropriating company that certain pages of this record were in the hand-writing of certain members of the corporation—James J. Robison, jr.—this question was asked:

"Q. And 70 to 83, whose hand-writing is that? (Objected to by the plaintiff.)

" Mr. Smith: I offer, and expect and intend to prove by the answer of this witness to this question that pages 70 to 83, inclusive, are in the hand-writing of said James J. Robison, and the signatures thereto are those of James J. Robison and David Robison, jr. (Objection sustained; to which ruling of the court the defendant, The Toledo Consolidated Street Railway company, then and there duly excepted.")

Mr. Brumback, counsel for the appropriating company, again requested the court to look at said exhibit, and the court again refused. The court says (on page 147): "We will sustain the objection on the ground that these pages have not been put in evidence."

" Mr. Smith: We offer, expect and intend to prove by the answer of the witness to this question that pages 37 to 56, page 58, and pages 70 to 83, inclusive, of said Exhibit No. 2, have been sealed up by this witness in such manner as to prevent any inspection thereof, and for the purpose of excluding this defendant, The Toledo Consolidated Street Railway Company, from an inspection of these parts of this alleged record.

The court sustained the objection, and refused to permit the witness to answer, and an exception was duly taken.

On page 480 further proceedings relating to the matter took place:

" Mr. Smith: I now offer in evidence pages 38 to 55, inclusive, of 'Exhibit No. 2.'"

Objection was made again, coupled with the allegation and claim that these pages purported to contain, and did contain matter material to the controversy.

"Mr. Smith: I offer and expect to prove, following along in the line of what we already find on page 37 of that book, that all the rights this company ever had in these ordinances and this property was transferred to one Willard F. Robison on or about the 8th day of May, 1890. Now I understand that book to be in possession of the court.

"Mr. Brumback: No, sir; it is not; we only introduced these certain pages.

"The Court: I think that is the same question we had once before, in which the court refused to look at those pages, and now again refuses to do so. We feel, under the circumstances, compelled to exclude these pages from being offered in evidence."

And there was again an attempt to get the court itself to inspect the book, for the purpose of determining its materiality, and also an offer by the attorney of the appropriating company to submit it to other persons—naming certain persons and officers—or other proper persons; but the court refused itself to look into the record for the purpose of determining whether anything material existed therein, and refused to allow it to go in evidence, and made no order referring the matter to any other person for the purpose of reporting.

I have called attention generally to the whole aspect of that controversy. It will be noticed on inspection of the record that a large part of these objections were first taken in this part of the proceeding, upon the cross-examination of one of the plaintiff's witnesses. The plaintiff had introduced a certain portion of the record, for the purpose of showing its due organization and its right to make the appropriation. It was held by this court, in the Adams street case, to which allusion has been made, that it is competent for the plaintiff company to do that—that is, to offer certain portions of its records, and that by that act the whole of the record is not necessarily in evidence; neither is it bound, in order to get that portion which it desires in evidence, to offer the whole record. The question, perhaps, thus presents itself; whether this was a proper cross-examination that the court was bound to allow.

So far as we can see by the record, it would not tend to call upon the witness to explain or deny or modify, any oral statements which he had made as a witness upon the stand. It was sought to lay the foundation, perhaps, for the introduction of this evidence, for the purpose of overthrowing the effect which might otherwise attach to the portion of the evidence which had been offered by the plaintiff company. It is claimed, however, or perhaps might be claimed, that this pertains to a matter which the plaintiff was bound to go into; that he was bound to prove these matters, and that therefore, under the ruling of the supreme court, the cross-examination might go into everything which bore upon this question whether the plaintiff by the witness upon the stand had gone into every question or not. But, as remarked, we think this cross-examination would not come under that rule, since it did not by any answer which the witness himself might make, tend to overthrow the testimony which had been introduced to the court in the proceeding—that really it was laying the foundation for evidence thereafter to be introduced on behalf of the defendant company; that was its legitimate effect, and while ordinarily, when a witness is upon the stand—a witness for the plaintiff—there is no objection to presenting certain

papers which are desired to be offered afterwards by the defendant in its defense, for the purpose of identification, yet in strictness we cannot say that as a matter of right the plaintiff's witness may be thus used when called upon the stand by the plaintiff. This is a matter which would naturally pertain to the defense; it is competent, to call in a witness for this identification when the defendant should present its case. We think, so far as the questions to the witness not allowed to be answered are concerned, that they were not strictly proper cross-examination, and that the action of the court cannot be said to erroneous in that view.

Now, as to the part of the record which indicates that the defendant itself desired this part of the record in evidence: The book seems to have been before the court, to be sure, but is stoutly denied by counsel producing it that it did offer, or desired or intended to offer, the book in evidence, but only those certain pages to which attention was called; it declined to and refused to allow an inspection of the other parts of the record. Neither the probate court nor this court can know—the probate court having refused to examine it—of course, what in fact was contained in that portion of the record. We have the statemeent of counsel that he offered, expected and intended to prove by that record certain facts to exist; that is, that it related to the organization of the company and the legality of the election of certain of its officers. So far as the last is concerned, it has been said in one case—the 15th Ohio State I think—that in such a proceeding the defendant company may not go into the question of the legality of the appropriating company.

The Revised Statutes bear upon the consideration of some of these questions—as to the inspection and production of documents. Sections 5290 and 5291 provide for the inspection and permission to take copies etc., of a book or paper, or document in possession of the opposite party, and section 5290 contains this provision:

"If compliance with the demand within four days be refused, the court or judge may, on motion and notice to the adverse party, order the adverse party to give the other, within the time specified, an inspection and copy, or permission to take a copy of such book, paper or document; and on failure to comply with such order, the court may exclude the paper or document from being given in evidence, or, if wanted as evidence by the party applying, may direct the jury to presume it to be such as the party, by affidavit, alleges it to be; but this section shall not be construed to prevent a party from compelling another to produce any book, paper or document when he is examined as a witness."

"Sec. 5291: If the party in possession of any such book, paper-writing or document alleged that the same, or any part thereof, is of mere private interest, or of such character that it ought not to be produced, or an inspection or copy thereof allowed or taken, the court may, on motion of either party, direct a private examination thereof by a master; if the master find that such book, paper, writing or document contains matter pertinent to the case, and proper to be produced, inspected or copied, he shall report the same to the court, or a copy of such part as he finds pertinent to the case, and proper to be produced, inspected or copied; and the book, paper, writing or document, or part thereof, so reported shall be admitted in evidence on the trial unless excluded by the court for proper cause."

It will be observed that the parties did not bring themselves under the provisions of this section; that is, there was no affidavit or any

statement under oath of any person as to the contents of the record thus excluded. There was a claim on the part of counsel as to what he expected and intended to prove if it was admitted, but no affidavit. There was no application to the court, when the court itself refused to inspect the paper for this purpose, for the appointment of a master, or any other person, under section 5291. That was offered by the other party, to be sure, but the Consolidated company made no application to the court, and no order of that kind was by it asked, and no order was made, and the record itself is not in evidence, and what were the contents, as I have said, we cannot know. This question, like many others which have arisen in the case, cannot be entirely free from doubt; but we are unable to see that the judgment in this case should be reversed upon the action of the court in this matter. It stands upon the record that this was claimed by the party—we must suppose in good faith that this book contained, as to the part now under consideration, matters of mere private interest. It is not shown that the other party knew in fact what it was—the excluded portions of this record; no affidavit or other proof of its contents is here, or the substance of it. No action being taken in the matter pointed out by the statute for an inspection, and no report of the materiality having been made, we are not clear that there is any foundation for the claim that error is manifest in the action of the court in this matter. So far as we know now, the statement made by counsel for the defendant company is true—that it did not contain anything pertinent to the case.

It is said that a portion of the record which was exposed to view indicated that the rights of the appropriating company had been assigned to some person, and it was claimed that if the balance of the record so concealed were revealed and shown to the court, it would indicate an assignment of all the rights of the appropriating company under this ordinance. It is a little difficult for us to conceive how that necessarily follows. It is said in all these parts of the record that this was a record of the doings of the plaintiff corporation. A transfer of interest would not, ordinarily, appear—the transfer itself—upon its own records. An authority to make the transfer might well appear thereon, if any such authority in fact were given; that might perhaps appear thereon—an admission that some transfer had been made might possibly appear thereon; but it is not offered to show that the transfer itself appeared, and it does not appear that naturally it would appear there. There is no evidence offered in the record, so far as we have found or so far as our attention has been called, that would supplement any assumption that it might appear to that effect upon the record. There is no offer or proof of the transfer, except as might appear there, and in view of these denials and the action, in the portion which I have read, we are unable to say that this action was erroneous.

Upon the trial before the jury, a return for taxation over the signature of an officer of the defendant company, was offered as bearing upon the value of this part of the road in question here. It was objected that a return for taxation under those circumstances, is no proof whatever of the value of the property—upon the known usage of persons; that it should not be regarded as proper evidence, that under the law it would not be. We confess that as to an ordinary person having no knowledge of the actual transactions of property owners in this state, it would appear that returns for taxation might not be any very weighty evidence of the actual value of the property designated therein;

but this is a matter as to the weight of the testimony, and we are unable to see why it would be incompetent to show a verified statement of the managing officer of this company, stating in so many words what the actual value of the property in question was, and the question of competency is here urged rather than its weight, which must be determined.

It is further claimed that one of the jurors was incompetent. Of course, this transaction, here is not to punish this juror; whatever punishment he might be liable to for the action that he took in appearing there and answering to a name not his own, that is not for this court to go into. It seems that a juror not drawn upon the panel regularly, but an interloper in the case, answered to the name of the juror, and perhaps the parties supposed all the while that he was really the man drawn. It turned out, after the verdict, that this man was the father of the person really designated in the venire. This John Brown was summoned. His name appears, and Michael Brown was the man who appeared and answered to the name of John. It seems he told the sheriff that he was not John Brown, but was sometimes called John Brown, but that his name was Michael. If that was true, there would be a little doubt as to what the duty of the sheriff would have been, under circumstances of that kind, and whether he did his duty or not we do not know, except that it does not appear whether he did anything, and so far as we have been able to go through this mass of testimony, we do not find anything bearing upon the question as to whether counsel for either party knew anything about it. There was the fact—he answered to the name of John Brown. He was not specifically asked if he was John Brown. He was a resident of the same ward with John Brown; he was, in fact, an elector, a legal juror, so far as his general status was concerned. Whether the parties concerned knew of this matter we do not know. There was no affidavit, or evidence, so far as we have observed, to show that the parties concerned, or the officers, or counsel, did or did not know of this matter. Now, under those circumstances, we think that after this great trial it would not be proper for us to reverse the judgment of the jury for a matter of that kind; especially in view of the fact that he was a competent juror if he had been drawn, and that we are not apprised but that the parties seeking to complain knew regarding the matter during or before the trial.

We come now to the principal matter in this case, and that is as to the holding of the probate court upon the question of damages. It seems that court excluded from the consideration of the jury finally, all testimony to show the costs that the Consolidated company had been put to in the matter of paving between these tracks, or the amount assessed upon it in lieu of its doing the paving work itself. Testimony was given, indicating the amount, but it was afterwards excluded, and in various parts of the record the probate court held—indicated to the jury and to counsel—that he didn't regard the cost of paving as a legitimate subject of inquiry in the case at all. It is said that he did this even with the proof that it rendered the tracks and structures of the defendant company themselves more valuable, firmer and in better condition and shape, and also would probably make it last longer; and finally excluded from the jury the consideration of the matter of pavement as originally put down.

Attention is called to the decision of this court in the Adams street case, *supra*, upon this matter. Now it is fair to say that in that case the question really did not come up for necessary consideration. There was

a suggestion regarding it in the record, and the court proceeded to state its views in the matter, and embodied it in the syllabus of the case after it was prepared—a statement of conclusions as to what would be proper for the jury to take into consideration in such a case, namely, that it might consider the question of the pavement. In that case it had been stated by the probate court (through another judge) that that was an element to be considered; not that any proportionate part of it would on that account be assessed against the appropriating company, but that it was a proper element to be taken into consideration by the jury in determining the value of the use sought to be appropriated. Well, now, we are still inclined to the opinion that what was said in the case was the true conclusion in the matter; nevertheless, we find almost absolute dearth of authorities upon it. A case in 1 Redfield on railways was alluded to, a report by the Massachusetts commissioners which bears upon the matter, but it will be noticed in that matter that there was a commission under the laws of the state of Massachusetts to determine these matters. It also appears in that case that the Broadway street railway company, one of the parties to that case, and the Metropolitan street railway company, whose tracks were to be used, had, before any franchise was granted to either, assented to a franchise that appeared in certain proceedings before the legislature and endeavored to join to procure favorable action of the legislature in that respect. They went into the matter in certain respects as partners in the transaction to obtain this concession. Afterwards it was arranged that the concession should be taken in the name of the Metropolitan company, and the Broadway Street Railway company should use a portion of these tracks after they were to be constructed, and nothing especially was said as to what compensation it should make. Afterwards the Metropolitan company having the concession, constructed its tracks—complied with the law and the ordinances with regard to the paving of the streets, and allowed the Broadway company to use its tracks, and the question of what would be a fair compensation under those circumstances was presented to this commission. But while as to compensation under circumstances of that kind, a little different conclusion might be arrived at than in a case of this kind, it would seem that the commissioners were assuming to proceed upon general principles such as they thought applicable to a case of that kind. or to the case of an appropriating company where one company proposes to use the tracks of another. They express doubts as to the correctness of the rule that they lay down as to whether the pavements which were to be done by the Metropolitan company should be considered, but their conclusion finally is, that it would be equitable to consider the costs of those pavements, and that a certain definite proportion of the whole matter should be assessed against the company that was using the track.

72 N. Y., 330, is a case which alludes to this matter in general terms, as to the specific matter of pavement—*Sixth Avenue Railroad* v. *Kerr et al.* It simply alludes in a general way to this report of the Massachusetts commissioners, and generally approves the reasoning. In a work which has lately been written upon street railway law, by Booth, this appears, being a part of sec. 116, on page 170, which is one considering the question of compensation for the use of tracks of another company: "A very important and pertinent inquiry at once arises: does this include the costs of bridges, viaducts, tunnels, or tolls for using them, the cost of the right of way over private property, the amount of future taxes and assessments, the expense of sprinkling and sweeping

the streets, the removal of snow from the tracks, the changes of grade to conform to public improvements, the original grading, the changes in gauge, size and kind of rails, to conform to charter obligations or rendered necessary by the changes in motive power or improvements introduced to secure greater speed and for the safer and more convenient handling of cars, the original cost of making pavements and the expense of their repair and renewal, and many other items necessary for the efficient maintenance of the roadway?''

This leaves it as a query, and says that all these questions will arise. In a note it alludes to the holding of this court in the Adams street condemnation case; and substantially those authorities—if you may call them authorities at all—are all of the authorities that we have been able to find, all that have been suggested by counsel, bearing upon this question of taking the original construction of the pavement into consideration in determining the values to be assessed here.

Counsel for . defendant in error strenuously maintain that the probate court was right in its ruling from the jury evidence as to the expense of pavement, substantially on the ground that inasmuch as the ordinance of the Consolidated company required it to supply and maintain the pavement between the rails of these tracks, such expense was the *quid pro quo* paid by it for the long years of use of the street enjoyed by it; and that the appropriating company should be no more called upon to pay any portion of such pavement expense than it should be called upon to pay abutting property owners for the pavements laid by them in the streets where its new tracks are laid.

It will be seen upon this general view of the matter that it is a matter of great uncertainty. It is not settled. Now, counsel for plaintiff in error say, in their brief: "It being necessary then to set aside the judgment and order a new trial, and as such order is not a final order from which proceedings in error may be taken, we believe it to be greatly for the interest of all parties thereto that all questions involved in this legislation should be passed upon by the supreme court at the earliest time and in the most convenient manner." Now, in view of all these interests involved in this record, this question is presented to us: the question of the rule of damages in such a case; and while we have an opinion upon it and which we have expressed, we cannot find that it is supported by any authority bearing directly upon the question. If we should reverse this judgment for errors of the court occurring upon the trial, and send it back to the common pleas for another trial, in the natural order of proceedings, the case would again come into this court upon error, until finally some party would take the whole matter to the supreme court, and the questions made upon a former hearing of this case would be decided. This great case would simply be handed back from one court to the other upon questions of what is proper in the trial of the case before a jury without the important questions arising in the case ever being authoritatively decided by the supreme court until it should finally go to that court.

We think in view of the situation of the case and the doubts that arise in the matter, that it would be more proper for this court to affirm this judgment notwithstanding its doubts regarding the measure of damages, than to simply reverse it and send it back to the court of common pleas for a trial before a jury. We are not inclined to reverse this judgment upon the other questions here; and counsel can well see the condition in which the

case and the parties would be in for many years, perhaps several years, in case we sent it back.

There is another important question in this matter, and that is as to the question of future maintenance and repairs: whether this is to be considered by the jury, or whether it was to be left for final adjustment in some manner after appropriation proceedings shall be had and the parties enter upon the use. In the former case cited by this court, that question cannot well be made or passed upon by the supreme court, as we think. However erroneous a view might have been taken by the probate judge in that case regarding the matter, if any error was committed, it must be regarded as in favor of the plaintiff in error, and we so regarded it, and found that it was not prejudicial error whether it was in fact error or not. It is an important question, and can never be authoritatively settled until it has been passed upon by the supreme court. We confess that we are in doubt about it. We have no right to reverse this judgment upon any consideration of that kind, unless we feel clear that there has been manifest error, and we are not sufficiently clear to warrant us in reversing the judgment on that account. And so we think, with counsel for the plaintiff in error, that it is better for the case to go into the supreme court, and these questions be authoritatively settled at as early a day as possible. In saying this, and in affirming this judgment, we say that we are not convinced that in any of these matters there is error. We simply are not clearly convinced that they are so prejudicial as to warrant us acting under the general rules which bind us in these matters, to reverse the judgment; and, therefore, we have determined to affirm the judgment and the entry will be so made.

*Baker, Smith & Baker*, and *Doyle, Scott & Lewis*, for Plaintiff in Error.

*Frank H. Hurd, Orville L. Brumback,* and *John F. Kumler*, for Defendants in Error.